**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WARRCLOUD, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:26-cv-01075-STA-jay** |
| | ) | |
| **JANET HAWORTH and RAINMAKER WARRANTY, LLC,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS**

This is an action for the misappropriation of trade secrets under federal and state law and for other tortious conduct based on state common law. Before the Court is Defendants Janet Haworth and Rainmaker Warranty, LLC's Partial Motion to Dismiss (ECF No. 8). Plaintiff WarrCloud, Inc. has responded in opposition, and Defendants have filed a reply brief. For the reasons set forth below, the Partial Motion is **GRANTED in part, DENIED in part**.

## BACKGROUND

Plaintiff filed its Verified Complaint (ECF No. 1) on April 9, 2026. For purposes of deciding Defendants' Rule 12(b) Motion, the Court accepts the following well-pleaded factual allegations of the Complaint as true. Plaintiff WarrCloud, Inc. provides automotive warranty claims processing and related solutions to franchise car dealerships across the United States. Verified Compl. ¶ 10. WarrCloud contracts with individual dealerships and dealership groups to streamline car warranty processing. *Id.* ¶ 11. WarrCloud's success in the highly competitive warranty processing field depends on its proprietary knowledge and client relationships, which

WarrCloud has spent years developing. *Id.* ¶ 12. WarrCloud continually makes significant investments in its employees and their development of those relationships with clients. *Id.* ¶ 13.

From November 9, 2020, to September 30, 2025, Defendant Janet Haworth was an employee of WarrCloud in multiple roles, all of which had extensive access to WarrCloud's confidential information. *Id.* ¶ 14. WarrCloud initially hired Haworth as a Warranty Administrator, and she received multiple promotions during her time with WarrCloud, including to the position of Ford Team Lead. *Id.* ¶ 15. Haworth was a certified Ford warranty administrator when WarrCloud hired her. *Id.* ¶ 16. WarrCloud subsequently assigned Haworth the position of Customer Success Specialist on or around February 17, 2025. *Id.* ¶ 17.

As a condition of her employment in the role of a Customer Success Specialist, Haworth signed a Protective Covenants Agreement (the "Agreement"). *Id.* ¶ 18. WarrCloud has attached a copy of the Agreement to its pleading as Exhibit A. Prior to the Agreement, Haworth also signed an Employee Proprietary Information and Inventions Agreement (the "EPIIA"). *Id.* WarrCloud has also attached a copy of the EPIIA to its pleadings as Exhibit B. As part of the EPIIA, Haworth agreed that she would not disclose WarrCloud's proprietary information. *Id.*

Haworth agreed that, for a period of three years following the termination of her employment, she would not:

> (a) solicit, induce, recruit, or otherwise encourage or arrange for any employee or independent contractors of Company to terminate employment with Company, and/or arrange for any employee to commence employment with any other person or business; [or]
>
> (b) solicit, cause, or permit to be solicited any Company client or customer that you acquired while an employee of Company.

*Id.* ¶ 19 (citing Exhibit A, ¶ 5).

Haworth further agreed to the following confidentiality provision:

> You are aware that the confidential information is not readily available to the public. You agree that during your employment with the Company, and after it ends, you will keep confidential and not disclose the confidential information to anyone or use it for your own benefit or for the benefit of others, except in performing your duties as our employee. You agree that this restriction shall apply whether or not any such information is marked "confidential." You agree that you will not at any time or in any manner, either directly or indirectly, divulge, disclose, or communicate any confidential information to any third party without the prior written consent of WarrCloud, acting through its authorized representatives only.

*Id.* ¶ 20 (citing Exhibit A, ¶ 2).

Throughout her tenure at WarrCloud, Haworth was a key contributor to WarrCloud's business development. *Id.* ¶ 21. She nurtured and built relationships with dealership contacts and promoted WarrCloud's services. *Id.* Haworth's duties and responsibilities required her to have access to WarrCloud's confidential and proprietary information including client names, client key contact information, client specifications, sales history, pricing, pricing methods, operations, strategic plans, and the like. *Id.* Throughout her employment at WarrCloud and in reliance on the promises she made in the Agreement and her initial NDA, WarrCloud gave Haworth mentorship, training, access to confidential and proprietary information, and access to its clients. *Id.* ¶ 22.

WarrCloud goes to great lengths to protect its trade secrets and other confidential information, including maintaining password-protected internal systems and establishing strict rules and procedures as to who may access such information and how, when, where, and why it may be accessed. *Id.* ¶ 23. WarrCloud further protects its trade secrets and other confidential information by closely monitoring access to its physical and electronic data, by requiring users with access to use passwords, by tracking user access to monitor suspicious activity, and by pursuing legal recourse against individuals, such as Haworth, who seek to co-opt its confidential and proprietary information. *Id.* ¶ 24. WarrCloud further protects its trade secrets by ensuring

that employees with access to them, such as Haworth, execute agreements like Haworth's, which provide for the confidentiality of confidential information and other trade secrets and for the return of all such materials at the end of employees' employment. *Id.* ¶ 25. WarrCloud expends significant time and resources to protect its trade secrets and other confidential information from disclosure. *Id.* ¶ 26.

In the Agreement, Haworth agreed that her position "require[d] and will continue to require the performance of services that are special, unique, extraordinary, and of an intellectual character and place[d] you in a position of confidence and trust with the clients and employees of the Company" and that "the rendering of services to the Company necessarily requires the disclosure of confidential information and trade secrets of the Company. Consequently, you agree that it is reasonable and necessary for the protection of the goodwill and business of the Company that you make the covenants contained in this agreement." *Id.* ¶ 27 (citing Exhibit A, ¶ 5).

On September 30, 2025, Haworth left her job at WarrCloud. *Id.* ¶ 28. At that time Haworth misled WarrCloud leadership as to what her plans for future employment were. *Id.* WarrCloud leadership explicitly told Haworth that it was not comfortable with her attempting to service any WarrCloud clients whom she serviced during her employment with WarrCloud. *Id.* On her way out the door following her resignation, Haworth downloaded thousands of items from WarrCloud's servers, including confidential information wholly unrelated to her job role. *Id.* ¶ 29. Upon information and belief, Haworth retained significant amounts of confidential information following her departure from WarrCloud, including customer lists and customer key contact information. *Id.* ¶ 30.

Specifically, WarrCloud understands that Haworth left with the following information:

a. Information regarding employee expertise, manufacturer certifications, and assignments which have allowed Haworth to specifically target WarrCloud employees to poach in violation of the Agreement;

b. Strategy and employee training documents;

c. Customer lists, contact information, billing history, and pricing data; and

d. WarrCloud financial information such as pricing minimums and maximums.

*Id.* ¶ 31.

After resigning from WarrCloud, Haworth established RainMaker Warranty, LLC (“Rainmaker”). *Id.* ¶ 32. Rainmaker is a direct competitor to WarrCloud, providing substantially similar services to the same client or customer market. *Id.* ¶ 33. An unrelated legal proceeding necessitated that WarrCloud maintain Haworth’s limited access to WarrCloud systems. *Id.* ¶ 34. WarrCloud and Haworth agreed that WarrCloud would compensate Haworth for her time spent on WarrCloud activities. *Id.* ¶ 35.

Since her resignation, Haworth has used WarrCloud’s confidential information to solicit several WarrCloud clients and employees, thereby violating the Agreement. *Id.* ¶ 36. Haworth has also recruited and attempted to recruit WarrCloud employees, thereby violating the Agreement again. *Id.* Haworth is attempting to unfairly and unlawfully divert to Rainmaker the community goodwill WarrCloud has developed. *Id.* ¶ 37.

Since her resignation, Haworth has sought to access areas of WarrCloud’s computer systems beyond her authorization on multiple occasions, including on December 9, 2025, February 4, 2026, and March 2, 2026. *Id.* ¶ 38. Upon information and belief, since her resignation, Haworth has successfully lobbied at least one WarrCloud customer to violate their contract with WarrCloud by soliciting current WarrCloud employees on Haworth’s behalf. *Id.* ¶ 39.

Prior to filing this lawsuit, WarrCloud met with Haworth at a restaurant near her home to discuss its concerns that Haworth was not honoring her contractual agreements. *Id.* ¶ 40. When confronted, Haworth refused to discuss the matter and stormed out of the room. *Id.* WarrCloud subsequently sent Haworth a letter, detailing its concerns and demanding that she honor her commitments. *Id.* After the meeting between WarrCloud and Haworth and the delivery of WarrCloud's cease-and-desist letter, Haworth again attempted to access WarrCloud's confidential information on March 2, 2026. *Id.* ¶ 41.

To date, WarrCloud has lost multiple clients and at least one employee to Haworth's improper use of WarrCloud trade secrets and confidential information and violations of her NDA and the Agreement. *Id.* ¶ 42. Haworth specifically knew of these WarrCloud clients and WarrCloud's reasonable expectation of ongoing business relationships with them. *Id.* As a result of Haworth's misconduct and her refusal to honor her promises in the Agreement, WarrCloud now faces the real and immediate threat of losing the goodwill, confidential information, and a competitive edge it spent time and expense to create, nurture, and grow. *Id.* ¶ 43.

From these premises, WarrCloud alleges the following causes of action: the misappropriation of trade secrets in violation of the Defend Trade Secrets Act (Count I), the violation of the Tennessee Uniform Trade Secrets Act (Count II), breach of contract (Count III), unfair competition (Count IV), tortious interference with economic advantage (Count V), and tortious interference with contract (Count VI).

Defendants now move for the dismissal of some of the counts and for the dismissal of Rainmaker as a party to the action. Defendants argue that the Complaint alleges conduct only by Haworth. The pleadings contain no facts to show why Rainmaker is liable under any of the theories alleged. Defendants argue therefore that the Court should dismiss Rainmaker. Next, Defendants argue that the Tennessee Uniform Trade Secrets Act preempts WarrCloud's claims

for unfair competition and tortious interference with prospective economic advantage. Likewise, the Court should dismiss WarrCloud's claim for tortious interference with a contract. WarrCloud's Verified Complaint did not identify the specific contract and did not attach the contract to its pleading. Finally, Defendants move for the dismissal of WarrCloud's prayer for exemplary or punitive damages, at least as a form for relief on its federal DTSA claim. WarrCloud failed to comply with the statutory notice requirements for such relief.

WarrCloud has responded in opposition. On the preemption issue, WarrCloud answers that its Verified Complaint alleges a plausible unfair competition claim based on more than the misappropriation of trade secrets. The test is whether the claim rises or falls on the trade secrets issue. WarrCloud's unfair competition claim is based on Haworth's breach of her contractual duties, her unauthorized access of WarrCloud's computer systems, and misleading WarrCloud leadership about her future plans. WarrCloud makes a substantially similar argument in defense of its claim for tortious interference with economic advantage. In addition to breaching her own agreements, Haworth also allegedly solicited Warrcloud customers and employees, independent tortious acts that support WarrCloud's claim for interference. As for its tortious interference with contract claim, WarrCloud argues that Rule 8 does not require it to attach the contract to its Verified Complaint. The pleadings allege the elements of the claim: the existence of a contract, the contract's material terms, Haworth's knowledge, breach of the underlying contract, and damages.

WarrCloud has also responded in opposition to the dismissal of Rainmaker. In WarrCloud's view, the pleadings plausibly allege Rainmaker's liability for its own conduct. WarrCloud alleges that Haworth misappropriated trade secrets and used the information to form her own company, Rainmaker. This is enough to show that Rainmaker is liable to WarrCloud for misappropriation of trade secrets. The DTSA is not to the contrary. WarrCloud argues that the

federal statute creates liability for misappropriation, which is defined to include the disclosure and use of improperly obtained trade secrets, the same conduct allegedly engaged in by Rainmaker. WarrCloud's allegations that Rainmaker acquired, used, or benefited from WarrCloud's trade secrets states the misappropriation claims. To the extent the Court finds WarrCloud has not met the pleading standards for any of its claims, WarrCloud requests an opportunity to amend.

Defendants' reply brief largely tracks the arguments in their opening brief. Defendants argue that WarrCloud's claims for unfair competition and interference with economic advantage are merely different glosses on the trade secrets claims. As for Rainmaker, the Verified Complaint repeatedly makes allegations about Haworth's individual conduct, not Rainmaker.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all the well–pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party. *Elec. Merchant Sys. LLC v. Gaal*, 58 F.4th 877, 882 (6th Cir. 2023) (citing *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019)). However, legal conclusions or unwarranted factual inferences need not be accepted as true. *Fisher v. Perron*, 30 F.4th 289, 294 (6th Cir. 2022) (citing *Iqbal*, 556 U.S. at 678).

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "(1) a short and plain jurisdictional statement, (2) a short and plain statement of the claim, and (3) an explanation of the relief sought." Fed. R. Civ. P. 8(a). "That's it. By listing these elements, Rule 8 implicitly 'excludes other requirements that must be satisfied for a complaint to state a claim for relief.'" *Gallivan v. United States*, 943 F.3d 291, 293 (6th Cir. 2019) (citing Antonin Scalia &

Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 10, at 107 (2012) (other citation omitted). Rule 8's notice pleading standard does not require "detailed factual allegations." *Iqbal*, 556 U.S. at 681.

But Rule 8 does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* "Although the rule encourages brevity," a plaintiff must nevertheless "say enough to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (citing *Dura Pharm. v. Broudo*, 544 U.S. 336, 346, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)). "Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 687.

In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This means, a complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Smith v. Gen. Motors LLC*, 988 F.3d 873, 877 (6th Cir. 2021) (citing *Boland v. Holder*, 682 F.3d 531, 534 (6th Cir. 2012)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) ("A complaint must contain enough 'factual matter' to raise a 'plausible' inference of wrongdoing.") (quotation omitted).

## ANALYSIS

### I. Prayer for Exemplary or Punitive Damages

As an initial matter, Defendants argued in their opening brief that WarrCloud was not entitled to an award of exemplary or punitive damages, at least for a violation of the DTSA. Defendants cite for support 18 U.S.C. § 1833, which requires employers to "provide notice of the [whistleblower] immunity set forth in this subsection in any contract or agreement with an employee that governs the use of a trade secret or other confidential information." 18 U.S.C. § 1833(b)(3)(A). A contract's failure to include such a provision "precludes an award of exemplary damages and attorney's fees." *Knox Trailers, Inc. v. Maples*, 581 F. Supp. 3d 1000, 1016 (E.D. Tenn. 2022) (citing § 1833(b)(3)(C)). Defendants argue that WarrCloud's prayer for exemplary or punitive damages under the DTSA should be dismissed for failure to include the statutorily required DTSA notice in its employment agreements

WarrCloud filed a response in opposition to the Partial Motion to Dismiss. However, WarrCloud did not address Defendants' arguments for the dismissal of the prayer for exemplary damages. A party's failure to respond to a specific argument raised in a motion to dismiss constitutes a waiver of the issue. *Allstate Ins. Co. v. Glob. Med. Billing, Inc.*, 520 F. App'x 409, 412 (6th Cir. 2013). In light of the fact that WarrCloud did not respond to Defendants' argument, the Court finds that WarrCloud has waived the issue. Therefore, Defendants' Partial Motion to Dismiss is **GRANTED** as to WarrCloud's prayer for exemplary or punitive damages as relief for its DTSA claim.

## II. WarrCloud's Allegations Concerning Rainmaker

The next issue presented is whether the Verified Complaint has properly alleged its claims against Rainmaker. Rule 8(a)'s notice pleading standard requires a plaintiff to "say enough to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Tellabs*, 551 U.S. 308 at 127. In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege enough factual material to "allow[ ] the court to draw the

reasonable inference that *the defendant is liable for the misconduct alleged*." *Kensu v. Corizon, Inc.*, 5 F.4th 646, 650 (6th Cir. 2021) (citing *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012)) (emphasis added). Here, WarrCloud has alleged that Haworth and Rainmaker are liable under six different causes of action. But Rainmaker argues WarrCloud has not alleged any facts to show that Rainmaker is liable for any of the alleged misconduct.

Rainmaker's point is largely true. The Verified Complaint describes actions taken by Haworth and not Rainmaker, though there are allegations that Haworth has taken information she improperly obtained from WarrCloud and used it in the course of establishing and operating her new company, Rainmaker. The question then is whether the Verified Complaint contains enough facts to show that Rainmaker is liable for any cause of action alleged by WarrCloud. To answer that question, the Court must make a claim-by-claim determination for each of WarrCloud's causes of action.

**A. <u>Misappropriation of Trade Secrets: Federal Defend Trade Secrets Act</u>**

The Court begins with WarrCloud's claim for misappropriation of trade secrets as a violation of the federal Defend Trade Secrets Act. To prove a violation of the DTSA, a plaintiff must establish

> (1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, use, or disclosure of the secret.

*In re Island Indus., Inc.*, No. 23-5200, 2024 WL 869858, at *2 (6th Cir. Feb. 29, 2024) (quoting *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021)) (cleaned up).

The DTSA defines "misappropriation" to include "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;" or "(B) . . . use of a trade secret of another . . . by a person (ii) who at the time

of . . . use, knew or had reason to know that the knowledge of the trade secret was (I) derived from or through a person who had used improper means to acquire the trade secret" or "(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret" or "(III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret." *Shepard and Assocs., Inc. v. Lokring Tech., LLC*, No. 24-3348, 2025 WL 1420931, at *5 (6th Cir. May 15, 2025) (quoting 18 U.S.C. § 1839(5)).

The Court holds that WarrCloud's Verified Complaint alleges enough facts to show Rainmaker is liable for the misappropriation of a trade secret. *Kensu*, 5 F.4th at 650. WarrCloud plausibly alleges that Haworth came into possession of WarrCloud's protected trade secrets in the course of her employment. According to WarrCloud, Haworth owed WarrCloud a duty "to maintain the secrecy of the trade secret or limit the use of the trade secret." *Shepard and Assocs.*, 2025 WL 1420931, at *5. WarrCloud further alleges that Howarth has used WarrCloud's trade secrets to form her own company, Rainmaker, and entered into direct competition with WarrCloud. Although the pleadings do not specifically allege what actions Rainmaker has taken, the reasonable inference is Rainmaker has now acquired WarrCloud's trade secrets and/or used the trade secrets with the knowledge Haworth had a duty not to disclose the information. This is enough to state a plausible DTSA claim against Rainmaker. Therefore, Defendants' Partial Motion to Dismiss is **DENIED** as to this issue.

**B. <u>Misappropriation of Trade Secrets: Tennessee Uniform Trade Secrets Act</u>**

WarrCloud also seeks to hold Rainmaker liable for violations of the Tennessee Uniform Trade Secrets Act. "Trade secrets are protected in Tennessee by the Tennessee Uniform Trade Secrets Act." *Williams-Sonoma Direct, Inc. v. Arhaus, LLC*, 109 F. Supp. 3d 1009, 1017–18 (W.D. Tenn. 2015) (citing Tenn. Code Ann. § 47–25–1702(1) *et seq.*). Like the DTSA, the

TUTSA protects against the misappropriation of trade secrets where "misappropriation" is defined to include "acquisition by a person who knows or has reason to know the trade secret was acquired by improper means." Tenn. Code Ann. § 47–25–1702(2). "Improper means" include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or limit use, or espionage through electronic or other means." § 47–25–1702(1).

Just as WarrCloud has plausibly alleged a DTSA misappropriation claim against Rainmaker, WarrCloud has alleged enough facts to show, when viewed in a light most favorable to WarrCloud, that Rainmaker is liable for misappropriation under the TUTSA. The Verified Complaint alleges that Haworth acquired WarrCloud's trade secrets by "improper means," that is, a through a breach of Haworth's duty to maintain the secrecy of the information. Although WarrCloud has not alleged the particulars, the facts create an inference that Rainmaker has acquired WarrCloud's trade secrets. WarrCloud alleges that Haworth established and operates Rainmaker as a direct competitor engaged in the same type of business as WarrCloud. This suffices to state a plausible TUTSA claim against Rainmaker. These allegations create a reasonable inference that Rainmaker has "misappropriated" WarrCloud's trade secrets, as the TUTSA defines the terms. Therefore, Defendants' Partial Motion to Dismiss is **DENIED** as to this issue.

**C. <u>Breach of Contract</u>**

WarrCloud alleges in Count III of the Verified Complaint that Rainmaker is liable for breach of contract (Count III). The elements for breach of contract are: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Tolliver v. Tellico Vill. Prop. Owners Ass'n, Inc.*, 579 S.W.3d 8, 25 (Tenn. Ct. App. 2019). The Verified Complaint alleges that the parties to the contract were WarrCloud and Haworth. In fact, Haworth allegedly entered into the Agreement

with WarrCloud during the course of her employment with the company. The Verified Complaint alleges, though, that Haworth formed Rainmaker after she resigned from WarrCloud. It is not at all clear how Rainmaker could be liable for breach of contract when the Verified Complaint never alleges Rainmaker was a party to the Agreement. Therefore, Defendants' Partial Motion is **GRANTED** as to WarrCloud's breach of contract claim against Rainmaker.

This leaves three more claims sounding in tort against Rainmaker: unfair competition (Count IV), tortious interference with economic advantage (Count V), and tortious interference with contract (Count VI). Defendants have raised other arguments—besides WarrCloud's failure to make specific allegations against Rainmaker—for the dismissal of the three remaining causes of action. Because the Court holds those additional arguments require the dismissal of these remaining claims, the Court need not decide whether the Verified Complaint alleges enough facts to hold Rainmaker liable for any of the remaining claims against it. The Court now considers Defendants' arguments for the dismissal of the remaining claims.

### III. Preemption of WarrCloud's Claims for Unfair Competition (Count IV) and Interference with Economic Advantage (Count V)

Defendants move for the dismissal of WarrCloud's claims for unfair competition and interference with economic advantage, arguing that the Tennessee Uniform Trade Secrets Act preempts both claims. TUTSA "displaces conflicting tort, restitutionary, and other [Tennessee] law . . . providing civil remedies for misappropriation of a trade secret." Tenn. Code Ann. § 47–25–1708(a). The Tennessee Supreme Court has not construed the code section or decided the scope of TUTSA preemption. The Court is left then to predict as an *Erie* proposition just how the Tennessee Supreme Court would decide the preemption arguments presented in Defendants' Partial Motion to Dismiss.

The Eastern District of Tennessee has predicted that the Tennessee Supreme Court would adopt the "same proof" test for TUTSA preemption. *Hauck Mfg. Co. v. Astec Indus., Inc.*,

375 F. Supp. 2d 649, 654–58 (E.D. Tenn. 2004). *Hauck* reached its conclusion based on a thorough analysis of cases from around the country interpreting the preemption provision of the Uniform Trade Secrets Act ("UTSA"). *Id*. at 658 (collecting cases). Under the "same proof" test, the TUTSA preempts another claim where the other claim "necessarily rises or falls based on whether the defendant is found to have 'misappropriated' a 'trade secret.'" *Id.*

Federal courts applying Tennessee law, including other members of this Court, have found *Hauck* and its adoption of the "same proof" test for TUTSA preemption persuasive. *Partylite Gifts, Inc. v. Swiss Colony Occasions*, 246 F. App'x 969, 976 (6th Cir. 2007) (affirming the district court's reliance on the "well-reasoned" opinion from *Hauck* ); *Cardinal Health 414 Inc. v. Adams*, 582 F. Supp. 2d 967, 984–85 (M.D. Tenn. 2008) (applying the "same proof" test from *Hauck* to TUTSA preemption); *J.T. Shannon Lumber Co., Inc. v. Barrett*, No. 2:07-cv-2847, 2010 WL 3069818, at *10–11 (W.D. Tenn. Aug. 4, 2010) (McCalla, J.) (same). This Court agrees and will consider Defendants' preemption argument in light of the "same proof" test articulated in *Hauck*.

The TUTSA will not preempt WarrCloud's claims for unfair competition and interference with economic advantage if the facts supporting WarrCloud's other claims are distinct from those supporting its trade secret misappropriation claim. *Hauck*, 375 F. Supp. 2d at 658. On the other hand, "if proof of a non-[T]UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it." *Id.* (citation omitted). The Court will consider each non-trade secret cause of action separately.

**A. <u>Unfair Competition</u>**

"Unfair competition is a broad term encompassing several related torts involving improper interference with business prospects." *Barrett*, 2010 WL 3069818, at *13. A plaintiff

alleging unfair competition "must show that (1) the defendant engaged in conduct that amounts to a recognized tort and (2) that tort deprives the plaintiff of customers or other prospects." *Id.* (citing *B & L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.3d 189, 216 (Tenn. Ct. App. 2004)). TUTSA preempts unfair competition claims under Tennessee law when the underlying tort involves the defendant's misappropriation of trade secrets. *RN Ent., LLC v. Clement*, 380 F. Supp. 3d 711, 721 (M.D. Tenn. 2019); *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 966 (M.D. Tenn. 2011); *Barrett*, 2010 WL 3069818, at *13.

Here, the TUTSA clearly preempts WarrCloud's unfair competition claim. The Verified Complaint alleges that Defendants are liable for unfair competition because "Haworth intentionally misappropriated WarrCloud's trade secret information in order to start a competing business, Rainmaker, and to divert WarrCloud's customers to the new entity" and "Haworth has used and is using WarrCloud's trade secret information to create and build a competing business." Verified Compl. ¶¶ 79–80. These are the factual predicates, Haworth's misappropriation of trade secrets to build her own competing business, for WarrCloud's claim of unfair competition. The Court can easily conclude under the "same proof" test that WarrCloud's unfair competition claim will rise or fall with its TUTSA claim.

WarrCloud argues that its unfair competition claims rests on a number of additional facts beyond the misappropriation of trade secrets. For example, the Verified Complaint alleges that Haworth breached her contractual duties, accessed WarrCloud's computer systems without authorization, and misled WarrCloud about her future plans. WarrCloud acknowledges these allegations are found in the factual background section of its pleading. WarrCloud argues, however, that each count of the Verified Complaint incorporates all of the pleading's previous allegations by reference, including Count IV where the Verified Complaint spells out the unfair competition claim.

Even so, the Verified Complaint specifies what conduct forms the basis of WarrCloud's unfair competition claim: Haworth's misappropriation of trade secrets, not the other facts WarrCloud now points to in its briefing. Even though the fact allegations cited by WarrCloud now are incorporated by reference into Count IV, Count IV makes clear that WarrCloud's unfair competition claim is based on Defendants' misappropriation of trade secrets. To the extent that WarrCloud asks the Court to read each of the additional facts into Count IV as predicates for the unfair competition claim, the pleadings do not permit such a reading.

In the final analysis, when deciding a Rule 12(b)(6) motion to dismiss, courts confine their analysis to the allegations in the pleadings, not a plaintiff's arguments in a response brief. *Waskul v. Washtenaw Cnty. Comm. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (citing *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020)). The Sixth Circuit has remarked that "[i]f plaintiffs believe they need to supplement their complaint with additional facts to withstand a motion to dismiss, they have a readily available tool: a motion to amend the complaint under Rule 15." *Id.* The Court holds that TUTSA preempts the unfair competition claim based on Defendants' misappropriation of trade secrets.

### B. Intentional Interference with Business Relationships

WarrCloud also alleges that Defendants are liable for tortious interference with its economic advantage, a tort known in Tennessee as intentional interference with business relationships. *Trau–Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (recognizing and defining the elements of the tort), *overruling Nelson v. Martin*, 958 S.W.2d 643, 645 (Tenn. 1997) (declining to recognize the tort of "interference with a prospective economic advantage"). In order to prove the claim, WarrCloud must show the following elements: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third parties, (2) the defendant's knowledge of that

relationship and not a mere awareness of the plaintiff's business dealings with others in general, (3) the defendant's intent to cause the breach or termination of the business relationship, (4) the defendant's improper motive or improper means, and (5) damages resulting from the tortious interference. *Id.*; *Act for Health v. Case Mgmt. Assocs., Inc.*, 128 F. Supp. 3d 1020, 1031 (E.D. Tenn. 2014).

The Court holds the TUTSA preempts WarrCloud's intentional interference claim. To establish the fourth element of the tort, WarrCloud alleges that Haworth used improper means to interfere with WarrCloud's business relationships: the misappropriation of trade secrets. Verified Compl. ¶ 87. Under the "same proof" test, WarrCloud's intentional interference claim will rise or fall with its TUTSA claim. It is true that WarrCloud makes additional allegations to flesh out its theory. According to WarrCloud, Haworth used confidential information to identify certain WarrCloud employees with "key certifications" and client relationships and then "targeted them for solicitation," all as part of an effort to damage WarrCloud. *Id.* ¶¶ 88–90.

Be that as it may, WarrCloud will necessarily need to prove that Haworth used improper means to solicit the employees and lure them away from WarrCloud, as it were. WarrCloud alleges the information Haworth utilized to carry out her illicit recruitment was protected and confidential. More to the point, the Verified Complaint alleges the information constituted a trade secret and Haworth misappropriated it. The Court concludes then that TUTSA preempts WarrCloud's intentional interference claim.

Because WarrCloud's unfair competition and intentional interference allegations are inextricably intertwined with its misappropriation of trade secrets allegations, the TUTSA preempts both claims. Therefore, Defendants' Partial Motion to Dismiss is **GRANTED** on these issues.

**IV. Failure to State a Claim for Tortious Interference with Contract (Count VI)**

WarrCloud finally alleges as part of Count VI of its Verified Complaint that Rainmaker is liable for tortious interference with contract. The Tennessee Supreme Court has defined seven elements for this claim: "(1) that a legal contract existed; (2) that the defendant was aware of the contract; (3) that the defendant intended to induce a breach of that contract; (4) that the defendant acted with malice; (5) that a breach of the contract occurred; (6) that the breach was a proximate result of the defendant's conduct; and (7) that the breach injured the plaintiff." *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 405 (Tenn. 2002), statutorily abrogated as recognized in *Willeford v. Klepper*, 597 S.W.3d 454, 462 (Tenn. 2020) (citing Tenn. Code Ann. § 29–26–121); *see also Academy of Allergy & Asthma in Primary Care v. Amerigroup Tenn., Inc.*, 155 F.4th 795, 820 (6th Cir. 2025) (citing *Givens*).

Rainmaker makes two arguments for the dismissal of the tortious interference claim. First, Rainmaker makes its general point about the lack of fact pleadings to show why Rainmaker is liable to WarrCloud. It is true the Verified Complaint alleges Haworth interfered with WarrCloud's contracts with unnamed third parties with the intent to induce a breach of contract. The pleadings also state that Haworth did so after she had left her job with WarrCloud and started Rainmaker to compete directly with her former employer. A reasonable inference drawn from the pleadings is that Haworth's interference gave Rainmaker a competitive advantage in the market for auto warranty servicing while disadvantaging WarrCloud's business. The Court can assume without deciding that when the Verified Complaint alleges Haworth engaged in this conduct after her departure from WarrCloud, she was acting for the benefit of her new business, Rainmaker.

Rainmaker makes a separate argument that WarrCloud failed to identify the specific contract at issue or attach the contract to its pleadings. Rainmaker contends that without more supporting details, WarrCloud has failed to allege the existence of a valid and enforceable

contract. The Sixth Circuit has held that "[i]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Northampton Restaurant Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 521 (6th Cir. 2012). In *Northampton Restaurant*, the Court of Appeals affirmed a dismissal for failure to state a claim for breach of contract when the plaintiff "did not attach any contracts to its complaint and did not include the language of any specific contractual provisions that had been breached by the [defendant]." *Id*. (holding that the plaintiff was not entitled to discovery to prove the contents of contracts where the plaintiff no longer had copies of the contracts in its possession).

WarrCloud does not dispute that it did not attach a copy of the specific contract at issue to its Verified Complaint. WarrCloud maintains it was not required to do so. True enough, there is no requirement that a plaintiff actually attach a contract to the complaint. *See* 2 Moore et al., *Moore's Federal Practice* ¶ 10.05[4] (3d ed. 1999) ("Contract claims will not be dismissed for failure to attach the contract to the complaint."). Defendants cite for support Federal Rule of Civil Procedure 10(c), which permits a party to attach a "written instrument" to a pleading and thereby incorporate the terms of the instrument into the pleadings. But Rule 10(c) "is permissive only, and there is no requirement that the pleader attach a copy of the writing on which this claim for relief or defense is based." 5A Charles Alan Wright and Arthur Miller, *Federal Practice and Procedure* § 1327 (3d ed 2005). WarrCloud's failure to attach the contract to its pleading will only be fatal then if WarrCloud has failed to allege "the actual terms of the contract allegedly breached." *Northampton Restaurant*, 492 F. App'x at 521.

The Court holds that the Verified Complaint fails to allege the specific terms of the contract with which Defendants allegedly interfered. WarrCloud alleges that it entered into a contract "with at least one dealer group (the 'Dealer Group') to provide warranty services on an

ongoing basis" on February 2, 2024. Verified Compl. ¶ 94. The pleadings never identify the "Dealer Group" or otherwise put Defendants on notice of the other party to WarrCloud's contract. Likewise, the pleadings fail to specify the term of the contract WarrCloud had with the unnamed Dealer Group. WarrCloud simply alleges that the term of the contract began on February 2, 2024. WarrCloud has not alleged how long the contract was to last or when Defendants allegedly interfered with it. In the absence of allegations about those key provisions, WarrCloud has not alleged enough facts to show the contract was still valid and enforceable at the time of the alleged interference.

Even if WarrCloud had included those details, the Verified Complaint would still fall short of stating a plausible interference claim. WarrCloud describes only one provision of the contract: the Dealer Group's promise not "to solicit WarrCloud's employees or hire any former WarrCloud employees within ninety days of the employee's departure from WarrCloud." *Id.* ¶ 95. WarrCloud alleges that Haworth interfered with WarrCloud's contract with the Dealer Group by "lobbying" the Dealer Group to "solicit or employ" WarrCloud employees. *Id.* ¶ 96. But once again, WarrCloud does not offer any particulars to identify the employees or the timing of their departures to show that the activities of the Dealer Group were undertaken at the behest of Defendants or in a manner that constituted a breach of the Dealer Group's agreement with WarrCloud.[1] Without more specific allegations about the contractual terms, WarrCloud has not alleged the existence of a valid, enforceable contract with the unnamed Dealer Group at the time of the alleged breach. Therefore, Defendants' Motion to Dismiss is **GRANTED** on this issue.

## V. <u>Plaintiff's Request to Amend its Complaint</u>

[1] WarrCloud also alleges the Dealer Group has since breached its contract with WarrCloud and now moved its business to Rainmaker. Verified Compl. ¶ 98. However, it is not entirely clear from the pleadings whether this also constitutes Defendants' allegedly interfering with WarrCloud's contract.

Lastly, WarrCloud argues that in the event the Court holds that it has failed to plead any of its claims, the Court should allow it to amend its pleading. The Sixth Circuit has consistently held that a party requesting leave to amend under Rule 15(a) must file a motion and that a conclusory request to amend in a brief opposing a motion to dismiss will not suffice. *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 322 (6th Cir. 2017) (collecting cases). Faced with a Rule 12(b)(6) attack on the sufficiency of its pleading, a plaintiff has several ways to seek the chance to amend its pleading: (1) amend the complaint as a matter of course during the 21 days after the defendant filed its motion to dismiss, (2) file a motion for leave to amend after the 21 days have passed, or (3) obtain the written consent of the defendant. *Id*. But a plaintiff has no right to "an advisory opinion from the Court informing [it] of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *Glazer v. Chase Home Finance LLC*, 704 F.3d 453, 459 (6th Cir. 2013) (citing *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776 (6th Cir. 2000)).

The Court finds WarrCloud's request to amend, entirely contingent as it was on the Court's ruling on Defendants' Rule 12(b)(6) Motion, is not well taken. WarrCloud did not avail itself of any of the means of amending the pleading afforded by Rule 15(a) and instead waited for the Court to make its determination on the Partial Motion to Dismiss. That practice is not the proper method for seeking leave to amend, even in response to a Rule 12(b) attack. Plaintiff has not prepared a proposed amended pleading or addressed how an amended pleading would cure any of the defects with the original pleading. Therefore, the Court declines to grant Plaintiff's cursory request to file an amended complaint.

## CONCLUSION

The Court holds that the Verified Complaint states plausible misappropriation of trade secret claims under the DTSA and TUTSA against Rainmaker. However, WarrCloud has failed

to state a breach of contract claim against Rainmaker or a claim for tortious interference with a contract against either Haworth or Rainmaker. And the TUTSA preempts WarrCloud's claims under Tennessee law for unfair competition and intentional interference with business relationships. Therefore, Defendants' Partial Motion to Dismiss is **GRANTED in part, DENIED in part**.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: September 16, 2026.